| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 9140 Hearst Court, Charlotte, North Carolina, 28269 | Case No. 3:24-mj-00027-WCM |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR SEARCH AND SEIZURE WARRANT

I, Willie L. Carswell, being first duly sworn, hereby state as follows:

### Introduction and Agent Background

1. I submit this Affidavit in support of an Application for a Search Warrant to search 9140 Hearst Court, Charlotte, North Carolina, 28269 (the "**TARGET RESIDENCE**"), further described in **Attachment A**, for the items described in **Attachment B**.

2. I have been a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") since January 2020. My duties as a Special Agent include the investigation of criminal violations of federal customs laws, narcotics laws, and financial crimes. I have been involved in investigations related to prohibited persons possessing firearms, persons engaged in money laundering, persons engaging in interstate transportation of stolen property through "Organized Retail Crime" (ORC), and persons distributing controlled substances. I have been involved in the execution of search warrants and arrests resulting from prohibited persons possessing firearms, persons engaged in money laundering, persons engaging in interstate transportation of stolen copy through ORC, and persons distributing controlled substances and concealing drug-related assets.

3. The statements contained in this Affidavit are based in part on my personal observations, background, experience, and training, and also information provided by other law

enforcement officers and other witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Warrant and does not set forth all my knowledge about this matter.

4. Based on the facts set forth in this Affidavit, probable cause exists to believe that the **TARGET RESIDENCE** contains evidence, contraband, fruits and instrumentalities, and property intended to be used in connection with violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property), 18 U.S.C. § 371 (Conspiracy to Commit Described Offense), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

### Characteristics of a Organized Retail Crime Fences:

5. Based upon my training, experience, and participation in the investigation of other ORC, I know the following to be generally true about fencing operations and ORC fences:

   a. A "fencing operation" is a form of organized crime consisting of three parts:

      1. The "boost," or in other words, the theft itself; a "booster" is one who "boosts;"

      2. The "fence," or in other words, the middleman who quickly resells stolen items; and

      3. A buyer of stolen property.

   b. ORC fences commonly maintain books, records, receipts, notes, ledgers, shipping records, money orders, and other papers relating to the transportation, ordering, sale, and distribution of stolen property and the proceeds of selling stolen property;

   c. ORC fences commonly maintain address and/or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the fencing operation, or of customers;

   d. ORC fences commonly maintain the aforementioned books, records, receipts, notes, ledgers, etc., where they have ready access to them;

   e. ORC fences commonly secrete proceeds of ORC sales, and records of clandestine transactions in secure locations within their residences, businesses, storage units,

2

and/or other locations so that they have ready access to these items, and to conceal these items from law enforcement authorities;

f. ORC fences commonly maintain items used to conceal, package, and distribute stolen property and ORC proceeds within their residences, their businesses, their vehicles, and/or other locations over which they maintain control so that they have ready access to these items, and to conceal these items from law enforcement authorities;

g. ORC fences commonly take or cause to be taken photographs of their stolen products, ORC proceeds, and packaging, and they usually maintain these photographs in their possession;

h. ORC fences commonly maintain large amounts of U.S. currency used to finance their ongoing fencing operation, as well as money wrappers and currency counting machines, within their residences, vehicles, and other locations over which they have control;

i. ORC fences commonly maintain large amounts of U.S. currency used to finance their fencing operation in secure locations within their residences and vehicles, such as safes and lock boxes;

j. ORC fences commonly equip their residences with surveillance cameras to provide early warning of other criminals who would attempt to rob them of their stolen products and proceeds or commit violence against them, and to provide early warning against law enforcement;

k. ORC fences commonly use and maintain firearms to protect their stolen products and/or ORC proceeds;

l. ORC fences commonly use cellular telephones and other electronic devices, such as tablets and laptops, to facilitate their thieving activities, and they commonly store the following, among other things, on such devices: records and documents as detailed in subparts a through c above, text messages concerning criminal activity, call details concerning telephone numbers that the device called or received calls from, and photographs of themselves, associates, stolen products, contraband, and ORC proceeds; and

m. ORC fences frequently maintain the above items in in their residences and in their vehicles, where they have ready access to them.

## Probable Cause

6. Based on the facts set forth below, probable cause exists to believe that Ryan Thomas CAHILL ("CAHILL") has committed and continues to commit violations of 18 U.S.C.

3

§ 2314 (Interstate Transportation of Stolen Property), 18 U.S.C. § 371 (Conspiracy to Commit Described Offenses), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering) and that evidence of CAHILLS's interstate transportation of stolen property, conspiracy, and money laundering activities is likely to be found at 9140 Hearst Court, Charlotte, North Carolina, 28269 (the "**TARGET RESIDENCE**").

7. In October 2023, investigators with the HSI office in Charlotte initiated an investigation into an organized retail crime (ORC) ring "boosting" primarily LEGO products at the direction of CAHILL, a Mecklenburg County, North Carolina resident and employee of Wells Fargo Bank. Through his position at Wells Fargo and his formal education, I have learned that CAHILL possesses banking and business experience, which I believe would make him familiar with electronic fund transfers and other wire transfers. Based on this investigation, investigators believe that members of CAHILL's "boosting" operation in the Western District of North Carolina are involved in the stealing and movement of LEGO products in and around the Charlotte, North Carolina metro area.

8. During this investigation, investigators have used an undercover agent and confidential informant posing as "boosters" to identify CAHILL as the "fence" selling stolen LEGO products via eCommerce platforms in various states and numerous jurisdictions throughout North Carolina.

9. During the investigation, investigators introduced a confidential informant ("CI #1")[1] to CAHILL. CI #1 spoke with CAHILL concerning his/her involvement in stealing LEGO products from various retail stores throughout the Charlotte, North Carolina metro area.

---

[1] CI #1 has previous convictions for crimes pertaining to larceny and theft spanning from 1990 to present, including a 2022 conviction for Common Law Robbery in Gaston County, North Carolina.

4

Investigators instructed CI #1 to lead CAHILL to believe that CI #1 was currently engaged in "boosting" LEGO and other products and was willing to steal highly lucrative LEGO items at CAHILL's request for minimal payment. In reality, CI #1 was working with investigators. CAHILL asked CI #1 to help him procure highly sought after LEGO products. I am personally aware of CI #1's true identity, and I have found the information CI #1 has provided to me to be truthful, accurate, and corroborated by other facts known to me.

10. On November 8, 2023, CI #1 told your Affiant that for approximately several weeks he/she had been aiding Albert Antonio HENDERSON[2] ("HENDERSON") in "boosting" LEGO products from retail stores from across the Charlotte, North Carolina metro area. CI #1 specifically detailed his/her involvement in stealing from Charlotte, North Carolina area Wal-Mart and Target stores. CI #1 told your Affiant that he/she and HENDERSON would steal LEGO products from different retail stores until they reached a specific amount of stolen inventory. CI #1 provided law enforcement with the name "Ryan" and stated that "Ryan" lived in the Charlotte, North Carolina area and acted as a fence who would receive the LEGO products that they stole. Specifically, CI #1 provided law enforcement with an address of 9140 Hearst Court, Charlotte, North Carolina 28269 (the "TARGET RESIDENCE") as the location where he/she and HENDERSON would take the stolen LEGO products to meet "Ryan."

11. CI #1 provided your Affiant with a telephone number (980) 298-0882 for "Ryan." CI #1 explained that he/she had never made a solo drop of stolen LEGO products to "Ryan," but obtained and kept his telephone number from interacting with him through HENDERSON. Law enforcement queried telephone number (980) 298-0882 through the financial services platform

---

[2] HENDERSON has previous convictions for crimes pertaining to larceny and theft spanning from 2011 to present, including a 2011 Breaking and Entering violation in Mecklenburg County, North Carolina.

Cash App and determined that it was linked to CAHILL. CI #1 identified CAHILL from photographs identified through social media outlet Facebook. CI #1 described to your Affiant how deliveries of stolen LEGO products to CAHILL were conducted. CI #1 stated that CAHILL would meet HENDERSON and him/her in the front driveway of the TARGET RESIDENCE, have them remove the anti-theft "spider wrapping," place the LEGO products in plastic totes, make payment - normally in the form of $50.00 bills and or CashApp electronic transactions, and place the plastic totes loaded with stolen LEGO products in the TARGET RESIDENCE's garage.

12. On November 30, 2023, HENDERSON and Ajuan Deshawn HEARN[3] ("HEARN") were identified by Target corporate investigators as the two "boosters" who were photographed stealing over $1,000.00 in LEGO products from the Target -Charlotte North Lake store at approximately 8:09 p.m. that day. After the theft, Target corporate loss prevention personnel observed HENDERSON and HEARN departing the Target North Lake store in a white Nissan. Later, at approximately 8:37 p.m., Target corporate loss prevention observed HEARN, while wearing the same clothing that he had on during the earlier Target theft at the Target North Lake store, steal over $600.00 in LEGO products from the Target – Kannapolis store. HEARN was documented by Target – Kannapolis as he departed the area in a white passenger vehicle matching the description of the white Nissan used earlier in the theft at the Target – North Lake location.

13. On December 1, 2023, HSI surveillance, while positioned around the TARGET RESIDENCE, observed a white Nissan passenger car displaying Florida registration DMK-4949

---

[3] HEARN has previous convictions in Georgia for crimes pertaining to larceny and theft spanning from 2014 to present.

6

Case 3:24-mj-00027-WCM    Document 3-2    Filed 01/25/24    Page 6 of 15

and occupied by two black males back into the driveway of the TARGET RESIDENCE. HSI SA John Willis, who was present at the TARGET RESIDENCE on December 1, 2023, observed CAHILL and one of the black males loading various sized boxes in grey plastic totes. HSI SA John Willis observed CAHILL place the grey totes in the attached garage at the conclusion of the meeting.

14. On December 15, 2023, HSI installed a pole camera overlooking the TARGET RESIDENCE. Based on a periodic review of the pole camera footage from December 15, 2023 until present, investigators observed the white Nissan visit the TARGET RESIDENCE on 11 occasions, dropping off boxes in the driveway of the TARGET RESIDENCE. The last such occasion recorded on the pole camera was on January 5, 2024.

15. On December 19, 2023, CI #1 made a recorded telephone call to CAHILL at telephone number (980) 298-0882. CI #1 identified himself/herself to CAHILL and set up a December 20, 2023, meeting date at the TARGET RESIDENCE. During the recorded telephone call, CAHILL provided CI #1 with the clothing sizes of his two children and asked CI #1 to pick him up some children's clothing if he/she came across it.

16. On December 20, 2023, your Affiant obtained twelve (12) boxes of LEGO products from the retailers Wal-Mart and Target. Five (5) of the twelve (12) LEGO boxes were equipped with anti-theft "spider wrapping" that was visible on the outside of the LEGO product.[4]

---

[4] "Spider wrapping" is a retail industry term for anti-theft equipment attached to a retail item, usually a box. Typically, it initiates an alarm or alerts a retail establishment if the entire item is removed from a retail store without authorized deactivation or if it is cut away. Boosters are known to employ various techniques to overcome these

Wal-Mart additionally supplied your Affiant with five (5) sets of children's clothing matching the sizes requested by CAHILL during the telephone conversation with CI #1 on December 19, 2023.

17.     On December 20, 2023, at approximately 2:25 p.m., CI #1 and an HSI Under Cover ("UC") agent delivered the LEGO kits and child sized clothing to the TARGET RESIDENCE. The UC and CI #1 represented to CAHILL that these items were stolen property. CI #1 told CAHILL that he/she had forgotten his/her tool that he/she used to remove the anti-theft "spider wrapping" from the LEGO boxes. CAHILL accepted the LEGO boxes even though they were noticeably equipped with the anti-theft devices. CAHILL paid CI #1 $620.00 for the LEGO products and children sized clothing and moved them inside the TARGET RESIDENCE in plastic totes.

18.     On December 20, 2023, at approximately 3:34 p.m., a black male matching HENDERSON's description was video recorded "boosting" over $800.00 in LEGO products from the Arboretum Charlotte - Barnes and Noble Store by Barnes and Noble security cameras. Barnes and Noble corporate security stated that after the theft of LEGO products, a white Nissan was observed leaving the store parking lot. On December 20, 2023, HSI video surveillance recorded a white Nissan arrive at the TARGET RESIDENCE after which CAHILL was seen unloading boxes into plastic totes and moving them into his garage.

---

security features, though the presence of the spider wrapping on an item outside of retail channels strongly suggests that the item has been stolen. An item equipped as such resembles the following:



19. On December 26, 2023, CI #1 contacted your Affiant via telephone and stated that he/she had spoken with CAHILL and that CAHILL was willing to meet him/her on December 27, 2023 at the TARGET RESIDENCE.

20. On December 27, 2023, CI #1 and the UC delivered to the TARGET RESIDENCE fourteen (14) LEGO products provided to HSI by Wal-Mart and Target, five (5) of which were noticeably equipped with anti-theft "spider wrapping." CAHILL accepted all the LEGO products including the LEGO products secured in anti-theft devices. CAHILL paid CI #1 $540.00 in US currency and paid CI #1 another $45.00 via Cash App. CAHILL was observed moving the LEGO kits that had been represented as stolen property into the garage portion of the TARGET RESIDENCE.

21. On December 29, 2023, at approximately 2:21 p.m., HENDERSON was identified and video recorded by Target corporate security "boosting" LEGO products from the Gastonia -Target store. HENDERSON and an unknown black male stole over $1,400.00 in LEGO products before leaving the Target parking lot in an unregistered black Honda Pilot documented by Target corporate security. At approximately 5:30 p.m. that same day, a black, unregistered Honda Pilot was recorded by the HSI pole camera dropping off boxes to CAHILL at the TARGET RESIDENCE.

22. On January 5, 2024, your Affiant and Barnes and Noble corporate investigators purchased a LEGO Harry Potter: Hogwarts Chamber of Secrets (76389) kit from eBay account "brikbybrik" for $110.00. EBay subscriber records obtained by HSI on January 8, 2024, indicate that eBay account "brikbybrik" is associated with CAHILL and has the TARGET RESIDENCE listed as the shipping address.

9

23. On January 9, 2024, Barnes and Noble corporate investigators received the LEGO Harry Potter: Hogwarts Chamber of Secrets (76389) via United Parcel Service ("UPS") at a UC address in South Carolina ("SC"). Utilizing a configuration of small and unnoticeable markings strategically placed on the LEGO packaging, Barnes and Noble corporate investigators determined that the LEGO product shipped to them by CAHILL from the TARGET RESIDENCE was "boosted" on January 3, 2024, from the Birkdale Village – Barnes and Noble store.

24. On January 8, 2024, Barnes and Noble corporate investigators purchased a LEGO City: Space Base and Rocket Launch Pad (60434) from eBay account "brikbybrik" for $125.00. eBay subscriber records obtained by HSI on January 8, 2024, indicate that eBay account "brikbybrik" is associated with CAHILL and has the TARGET RESIDENCE listed as the shipping address.

25. On January 10, 2024, Barnes and Noble corporate investigators received the LEGO City: Space Base and Rocket Launch Pad (60434) via UPS at a UC address in SC. Utilizing a configuration of small and unnoticeable markings strategically placed on the LEGO packaging, Barnes and Noble corporate investigators were able to determine that the LEGO product shipped to them by CAHILL from the TARGET RESIDENCE was stolen from the Morrison Place Charlotte – Barnes and Noble store between January 1, 2024, and January 7, 2024.

26. A review of account records for eBay account "brikbybrik" showed that LEGO products with a retail value of approximately $225,000.00 have been sold through that eBay account since October 2022. In December of 2023, eBay account "brikbybrik" sold and shipped

LEGO products approximately three hundred and fifty (350) times to eBay buyers nationwide, including the west coast of the United States (US) and Puerto Rico (PR).

27. The investigation has also revealed that HENDERSON and others associated with him have stolen approximately $150,000 in LEGO products from Wal-Mart, Target, and Barnes and Noble during the same timer period that eBay account "brikbybrik" has sold products.

28. Additionally, the investigation has revealed that CAHILL also sold LEGO products over Facebook marketplace. However, the dollar amount of LEGO products sold by CAHILL over Facebook marketplace is unknown at this time.

29. Based on my training, experience, and knowledge of this investigation, CAHILL is likely using the **TARGET RESIDENCE** as a stash location for a bulk "boosted" LEGO products while living there. Accordingly, based on my training, experience, and knowledge of this investigation, probable cause exists to believe that CAHILL has committed and continues to commit violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property), 18 U.S.C. § 371 (Conspiracy to Commit Described Offense), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering) and that evidence of CAHILL's ORC ring activities is likely to be found inside the **TARGET RESIDENCE**.

## Conclusion

30. Based on the facts set forth in this Affidavit, I submit that probable cause exists to believe that the **TARGET RESIDENCE** contains evidence, contraband, fruits and instrumentalities, and property intended to be used in connection with violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property), 18 U.S.C. § 371 (Conspiracy to Commit Described Offense), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

/s/ Willie L. Carswell II
Willie L. Carswell II
Special Agent, HSI

Affidavit Reviewed by Assistant United States Attorney Jenny Sugar.

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 25th day of January, 2024, at 9:00AM.

Signed: January 25, 2024

W. Carleton Metcalf
United States Magistrate Judge

**ATTACHMENT A**

The residence at 9140 Hearst Court, Charlotte, North Carolina, 28269, including the attached garage and any vehicles on the property (the "**TARGET RESIDENCE**"). The **TARGET RESICENCE** is an approximately 2,300 square foot two-story house. The residence's front side is white and there is a two-car garage to the left of the front door as viewed from the roadway. A paved driveway leads to the residence and connects the property to Hearst Court. Below are photographs of the **TARGET RESIDENCE** and its location:





2

# ATTACHMENT B

The following items tending to establish violations of 18 U.S.C. § 2314 (Interstate Transportation of Stolen Property), 18 U.S.C. § 371 (Conspiracy to Commit Described Offense), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

1. Documents and other records used to facilitate ORC activities, including but not limited to ledgers, travel documents, bank and other financial records, address and telephone books, customers list, and other papers containing the names and telephone numbers of co-conspirators;

2. Photographs of "boosters" and thieves, stolen items, ORC proceeds, and mailed packages;

3. U.S. currency greater than $500, and any lock box or safe;

4. Documents and other paperwork, including lease agreements and paid utility bill receipts, reflecting occupancy and use of any residence;

5. Security systems and video footage;

6. Stolen retail merchandise; and

7. Cellular telephones, tablets, laptops, electronic storage devices (a separate search warrant will be sought before electronic devices are searched).